Rel: March 28, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

———————————————

## CR-2024-0078

———————————————

## Teresa Darwin Phillips

## v.

## State of Alabama

## Appeal from DeKalb Circuit Court
## (CC-22-432)

COLE, Judge.

Teresa Darwin Phillips pleaded guilty to two counts of first-degree theft of property, violations of § 13A-8-3, Ala. Code 1975, two counts of first-degree theft by deception, violations of § 13A-8-3, Ala. Code 1975, one count of first-degree financial exploitation of an elderly person, a

violation of § 13A-6-195, Ala. Code 1975, one count of second-degree theft of property, a violation of § 13A-8-4, Ala. Code 1975, one count of second-degree financial exploitation of an elderly person, a violation of § 13A-6-196, Ala. Code 1975, one count of third-degree theft of property, a violation of § 13A-8-4.1, Ala. Code 1975, and one count of third-degree theft by deception, a violation of § 13A-8-4.1, Ala. Code 1975.[1]  Phillips was sentenced to 20 years' imprisonment, which was split for Phillips to serve 4 years' imprisonment followed by 5 years' supervised probation, for each count of first-degree theft of property, each count of first-degree theft by deception, and the count of first-degree financial exploitation of an elderly person; 10 years' imprisonment, which was split for Phillips to serve 3 years' imprisonment followed by 5 years' supervised probation for the count of second-degree theft of property and the count of second-degree financial exploitation of an elderly person; and 5 years' imprisonment, which was split for Phillips to serve 1 year of imprisonment followed by 2 years' supervised probation, for the count of

_____

[1]In exchange for Phillips's guilty pleas to those counts, the State nol-prossed one count of first-degree theft by deception, see § 13A-8-3, Ala. Code 1975, two counts of third-degree forgery, see § 13A-9-3.1, Ala. Code 1975, and five counts of unlawful practice of law, see § 34-3-1, Ala. Code 1975.

2

third-degree theft of property and the count of third-degree theft by deception; all sentences were to run concurrently. On appeal, Phillips argues that the trial court erred when it departed from the presumptive sentencing standards because the State did not file its notice of aggravating factors before she entered her guilty pleas and because, she says, no good cause existed to excuse the State's late notice.

<u>Facts and Procedural History</u>

Phillips was previously a licensed attorney practicing law in the State of Alabama. However, Phillips was suspended and subsequently disbarred from the practice of law in the State of Alabama. The DeKalb County District Attorney's Office, on February 28, 2020, received a report from the Alabama Bar Association on Phillips that concerned "'possible misappropriation and theft of funds related to a real estate closing in October of 2019.'" (R. 85.) This led to a more thorough investigation of Phillips's law practice and the uncovering of multiple victims of Phillips's deception.

On November 7, 2022, the State and Phillips entered into a written plea agreement. While the State and Phillips did not agree upon sentencing terms, the agreement did provide that Phillips would plead

3

guilty to nine felony counts and, in exchange for those pleas, the remaining counts Phillips faced would be dismissed. Phillips also agreed to pay restitution to her victims in the following manner: $10,000 to L. Ronald Pannell or Lance and Cynthia Kittle; $94,000 to Donna Schultz; $777 to Ron Gifford; $1,050 to Janice Woo; $68,000 to Terri Cornett or Carol Newsome, as personal representatives of the estate of Mary Helen Slaton; and $7,600 to Janice Woo, as personal representative of the estate of Anna Price.[2] The parties agreed to postpone the sentencing hearing for a minimum of 60 days to allow Phillips time before the sentencing hearing to make payments toward restitution owed to the victims. The written agreement stated:

> "The Defendant understands that her payment of restitution pending sentencing shall be used as a determinative factor in the State's arguments related to sentencing. The State reserves the right to oppose Defendant's application for probation or community corrections, dependent in part upon her payment of restitution pending sentencing."

(C. 30-31.) The trial court also reviewed these provisions with Phillips during the guilty-plea colloquy. The written plea agreement further

---

[2]An additional $56,000 in restitution was owed to Dale Chisholm, but he died before the sentencing hearing and had no heir. Also, an additional $1,500 in restitution was owed to Howard Gant, but he also died and left no heir. (C. 131.)

4

stated that Phillips did not reserve any issues for appeal except "the right to appeal issues related to sentencing if said appeal should become necessary." (C. 30-31; R. 8-10.) This agreement was signed by the State, Phillips, and Phillips's attorney. On November 7, 2022, the trial court accepted the plea agreement, and Phillips entered guilty pleas to the aforementioned charges. (C. 32.)

At the time Phillips entered her guilty pleas, the State had not filed any notice of aggravating factors. The presumptive sentencing standards indicated a nonprison recommendation and a durational range of 24 to 46 months on a straight sentence and 6 to 12 months on a split sentence. However, under the statutory sentencing scheme, Phillips faced, for her Class B felonies, a range of 2 to 20 years' imprisonment; for her Class C felonies, a range of 1 year and 1 day to 10 years' imprisonment; and for her Class D felonies, a range of 1 year and 1 day to 5 years' imprisonment.

On the day that the sentencing hearing was originally scheduled, February 2, 2023, the State filed its notice of aggravating factors. At the sentencing hearing, Phillips "object[ed] to any aggravating factors being considered" for sentencing because she "never agreed to any" aggravating factors and none had been found by a jury. (R. 20.) The State argued

5

that Phillips should have been on notice of some aggravating factors based upon the offenses that she had pleaded guilty to, particularly, the offenses involving victims with advanced age or who were unable to care for themselves. The State also argued that the written plea agreement expressly noted that its recommendation on sentencing was to be determined by Phillips's payment of restitution pending sentencing. Phillips indicated that if the trial court were to allow the State to proceed with proving aggravating factors, she would likely move to withdraw her guilty pleas. The trial court set a hearing to determine whether the State had good cause for its late notice of aggravating factors and, if it did, whether Phillips desired to withdraw her guilty pleas.

At a hearing on May 31, 2023, the State informed the trial court that there had been extensive settlement negotiations between the parties in the case. Those discussions centered around the victims' concerns of getting restitution as soon as possible. Throughout the discussions, the sentencing durational terms discussed were 15- to 20-year terms because of the large amount of restitution owed to the victims; however, a reverse split was suggested because the priority was "to make sure [the victims] got paid back as much as possible as quickly as

6

possible." (R. 51-52.) According to the State, Phillips suggested the blind plea agreement with her sentencing determination being contingent upon her payment of restitution pending sentencing in the hopes that she could receive a more favorable sentence after showing "her good faith effort to make things right." (R. 53-54.) That agreement and postponement of sentencing to allow payment toward restitution "was supposed to be to her benefit as well as to the benefit of the victims." (R. 53.) The State told the trial court that all the negotiations were based on a 15-year or 20-year term of imprisonment and that there was no discussion regarding a durational term "anywhere in the range of 46 months." (R. 54.) Based on the settlement discussions, the State did not file its notice of aggravating factors before the date of the original sentencing hearing, but it filed its notice on the date of the hearing, after it confirmed that Phillips had paid nothing toward restitution. The State explained that there was then "nothing left for us to do but to ask for her to be sentenced at the maximum range" and argued that it had relied in good faith on the discussions with Phillips, which it said provided good cause for the late notice based on her not paying anything toward restitution. (R. 57.) Phillips did not refute the State's assertions but

7

simply argued that settlement negotiations are not admissible evidence, alluding to Rule 410, Ala. R. Evid.,[3] and that the State's failure to provide proper notice of aggravating factors before Phillips pleaded guilty made her pleas involuntary.

In finding that good cause existed for the late notice, the trial court determined that, considering the extensive negotiations, the large amount of restitution at issue, and the nature of Phillips's relationship with her victims,[4] it was reasonable to assume that aggravating factors would be considered at sentencing. Moreover, the trial court noted that the plea discussions, which included statutory ranges of punishment, also indicated that aggravating factors were to be considered. After

---

[3]While Rule 410, Ala. R. Evid., provides that settlement negotiations are not admissible "against the defendant who made the plea or was a participant in the plea discussions," it does not go so far as to preclude settlement negotiations from ever becoming relevant evidence in a hearing to determine whether there was an agreement and, if so, what the terms of the agreement were. See Ex parte Yarber, 437 So. 2d 1330, 1332-33 (Ala. 1983) (showing discussion of plea negotiations to determine whether a plea agreement was made and, if so, what its terms were). Likewise, the parties' settlement negotiations are relevant here to determine whether good cause existed for the State's late notice of aggravating factors.

[4]Phillips was acting in her capacity as a lawyer for each victim when the offenses occurred.

discussion, Phillips declined to withdraw her guilty pleas, and a jury trial was set for the State to prove its aggravating factors.

On November 13, 2023, Phillips ensured that her objections to the late notice of aggravating factors were noted and notified the court that she was preserving and reserving her argument regarding the late notice for appeal. (R. 68-69.) Thereafter, Phillips stipulated to three aggravating factors: (1) "[e]ach of the offenses to which the Defendant pled guilty involved a fiduciary relationship that existed between the Defendant and the victim"; (2) "[t]he offenses to which the Defendant pled guilty involved an attempted or actual taking or receipt of property of great monetary value or damage causing great monetary loss to the victim(s)"; and (3) "[f]our of the victims involved in the charges to which the Defendant pled guilty were particularly vulnerable due to age, infirmity, or reduced physical capacity that was known or should have been known to the Defendant." (C. 111; R. 69-73.)

On January 25, 2024, Phillips was sentenced as outlined above. All the sentences were ordered to run concurrently. This appeal follows.

Discussion

On appeal, Phillips raises two arguments: (1) whether she properly preserved for appellate review her argument regarding the State's late notice of aggravating factors and (2) whether good cause existed for the State's late notice of aggravating factors.

I.    Preservation

We must first determine whether Phillips preserved her argument for appellate review.  Section 12-25-34.2(c), Ala. Code 1975, states:

> "Durational and dispositional departures from the presumptive sentencing standards shall be subject to appellate review.  Along with the modifications provided for in subsection (b), the Alabama Sentencing Commission shall recommend a narrowly defined scope of appellate review applicable to departures from presumptive sentencing recommendations. The scope of appellate review shall become effective upon approval by an act of the Legislature enacted by bill."

Therefore, a trial court's decision to depart from either a durational or dispositional recommendation of "the presumptive sentencing standards is, in fact, subject to appellate review." Hyde v. State, 185 So. 3d 501, 507 (Ala. Crim. App. 2015).  Moreover, this Court applies "an abuse-of-discretion standard of review" to departure sentences.  Id. at 508.

10

At the time Phillips entered her guilty pleas, Phillips reserved the right to appeal any sentencing issue should it become necessary. Just before Phillips's sentencing hearing, the State filed its notice of aggravating factors to request sentences that departed from those recommended under the presumptive sentencing standards. Phillips objected to the State's late notice of aggravating factors and requested that no aggravating factors be considered by the trial court. The trial court set a hearing to determine whether there was good cause for the State's late notice and, if there was good cause, whether Phillips desired to withdraw her guilty pleas. The trial court determined that good cause existed for the State's late notice and allowed Phillips an opportunity to withdraw her guilty pleas. Phillips did not desire to withdraw her guilty pleas; instead, Phillips preserved and reserved her argument regarding whether the State had provided good cause to excuse its late notice of aggravating factors to seek departure sentences.

We find that Phillips properly preserved her argument for appellate review. At the time Phillips entered her guilty pleas, Phillips was not aware, and could not have been aware, that the trial court would depart from the presumptive sentencing standards. See Hyde, 185 So. 3d at 510-

11

11 (discussing when timing is appropriate for notice of appeal of a sentence that departs from a sentence recommended under the presumptive sentencing standards).  However, before she entered her guilty pleas, Phillips expressly reserved the right to object to sentencing matters.  Then, once Phillips was aware of the trial court's decision to depart from the presumptive sentencing standards, Phillips objected to the State's late notice of aggravating factors and received an adverse ruling.  Those actions both reserved and preserved Phillips's argument for appellate review.  We now turn to the merits.

## II.   Good Cause

Phillips argues that the trial court erred when it found good cause existed to excuse the State's late notice of aggravating factors to seek sentences that departed from those recommended under the presumptive sentencing standards.  (Phillips's brief, pp. 15-26.)

We first note that when Phillips entered her guilty pleas on November 7, 2022, Phillips's sentences were controlled by the presumptive sentencing standards.  See Presumptive and Voluntary Sentencing Standards Manual, p. 26 ("Where a sentencing event includes both a worksheet offense and a non-worksheet offense and both carry the

12

same statutory maximum penalty as governed by the felony offense classification, the worksheet offense is the most serious offense. The other offense should be scored as an additional offense where appropriate."). For instance, because Phillips pleaded guilty to Class B worksheet offenses -- first-degree theft of property and first-degree theft by deception -- and to a Class B nonworksheet offense -- first-degree financial exploitation of an elderly person -- the presumptive sentencing standards controlled Phillips's sentences. The presumptive sentencing standards recommended a nonprison sentence and a durational sentence of between 24 to 46 months, on a straight sentence, and 6 to 12 months, on a split sentence. (C. 33-34.) However, the statutory range of punishment for a Class B felony offense was a sentence of not less than 2 years' imprisonment and not more than 20 years' imprisonment. § 13A-5-6(a)(2), Ala. Code 1975. The State did not file notice of aggravating factors before Phillips entered, and the trial court accepted, Phillips's guilty pleas.

On February 2, 2023, the day that Phillips's sentencing hearing was initially set, the State filed its notice of aggravating factors seeking sentences that departed from the presumptive sentencing standards.

13

The procedure to depart from the presumptive sentencing standards is as follows:

"1. <u>In General -- Departures Should be Rare</u> -- The Standards are designed to provide appropriate recommendations for sentences in covered cases and are presumptive for non-violent covered offenses as defined in Ala. Code § 12-25-32. However, in exceptional cases, upon a finding of aggravating and/or mitigating factors, the sentencing court may depart from either a dispositional or durational sentence recommendation or from both. Departure sentences should be rare, with the court following the presumptive recommendation in the vast majority of sentenced cases.

"Dispositional Departures are only allowed for Class D felony convictions if the offender has been previously convicted of any three or more felonies, or previously convicted of any two or more felonies that are Class A or Class B felonies.

"2. <u>Two Decisions</u> -- The disposition and the duration of sentence are two separate decisions requiring separate, although not necessarily different, aggravating and/or mitigating factors for each departure.

"3. <u>Consideration of Aggravating and Mitigating Factors</u> -- The Court must consider all aggravating and/or mitigating factors proven for a sentencing event, but the decision to depart from the presumptive sentence recommendation is the in the discretion of the court.

"-- Recognized aggravating and mitigating factors are provided below.

"-- Worksheet scoring factors for the most serious offense may not be used as aggravating factors for the sentencing event.

14

"-- A necessary element of the most serious offense may not be used as an aggravating factor for the sentencing event.

"4. <u>Burden of Proof -- Aggravating Factors</u> -- The prosecutor bears the burden of proving beyond a reasonable doubt that an aggravating factor exists. The defendant is entitled to a jury trial on the existence of any aggravating factor, unless the aggravating factor is admitted by the defendant or both the defendant and the prosecutor waive a jury determination and request the judge alone to decide. It is within the discretion of the trial court whether to bifurcate the trial and sentencing phase of a covered case.

"5. <u>Burden of Proof -- Mitigating Factors</u> -- The defendant bears the burden of proving by a preponderance of the evidence that a mitigating factor exists. A jury is not required to determine the existence of a mitigating factor.

"6. <u>Notice -- Aggravation</u> -- The prosecutor shall give the defendant notice of aggravating factors no less than seven (7) days before trial. Once given, notice is deemed sufficient for any future trial settings. For good cause shown, notice may be given at any time with the consent of the trial court, provided the defendant is given an opportunity to research and rebut the aggravating factor. Notice can be waived.

"7. <u>Notice Requirements -- Mitigation</u> -- The defendant shall give the prosecutor notice of mitigating factors no less than seven (7) days before sentencing. Once given, notice is deemed sufficient for any future sentencing settings. For good cause shown, notice may be given at any time with the consent of the trial court, provided the prosecutor is given an opportunity to research and rebut the mitigating factor. Notice can be waived.

"8. <u>Stating Reasons for Departure</u> -- The aggravating and/or mitigating factors found as reasons for any departure must be

15

stated in the written sentencing order, even if the departure sentence is the result of a plea agreement and the parties have agreed to the existence of the aggravating and/or mitigating factors."

Presumptive and Voluntary Sentencing Standards Manual, pp. 30-31 (footnote omitted).  Contained within the list of aggravating factors are the three aggravating factors that Phillips admitted to in this case: (1) "[t]he offense involved a fiduciary relationship, including a domestic relationship, which existed between the defendant and victim"; (2) "[t]he victim was particularly vulnerable due to age, infirmity, or reduced physical capacity that was known or should have been known to the defendant"; and (3) "[t]he offense involved an attempted or actual taking or receipt of property of great monetary value or damage causing great monetary loss to the victim(s)."  Presumptive and Voluntary Sentencing Standards Manual, p. 32.  The only issue presented here is whether the State's notice of aggravating factors was timely and, if not, whether good cause existed to allow the State's late disclosure.

The State was required to give Phillips "notice of aggravating factors no less than seven (7) days before trial."  Presumptive and Voluntary Sentencing Standards Manual, p. 31.  Phillips did not proceed to trial in this case.  Rather, a week before Phillips's scheduled trial,

16

Phillips entered guilty pleas. (C. 27-28.) This Court has found, in a speedy-trial analysis, that "where the defendant pleads guilty, the 'trial' date is the date he or she pleads guilty." Horton v. State, 369 So. 3d 1128, 1132 (Ala. Crim. App. 2022). However, even if we use the initial date of the sentencing hearing for this notice requirement, the State failed to give timely notice. Yet, the State's untimely notice does not end our inquiry. Notice can, "[f]or good cause shown, … be given at any time with the consent of the trial court, provided the defendant is given an opportunity to research and rebut the aggravating factor[s]." Presumptive and Voluntary Sentencing Standards Manual, p. 31.

Although "good cause" is not defined in the manual, good cause is generally defined as "[a] legally sufficient reason." Cause, Black's Law Dictionary (12th ed. 2024). Moreover, "the presumptive sentencing standards were implemented to '[a]llow judges to retain significant discretion in arriving at a sentencing decision[]." Hyde, 185 So. 3d at 508; see Presumptive and Voluntary Sentencing Standards Manual p. 18; see also § 12-25-2(a)(5), Ala. Code 1975.

The State argued to the trial court that good cause existed because the aggravating factors were clear from the nature of the offenses Phillips

17

pleaded guilty to; it was agreed that the State's recommendation at sentencing would be dependent upon Phillips's payments toward restitution before sentencing; and, at the time the open pleas were entered, the State expressly reserved the right to oppose Phillips's "application for probation or community corrections dependent in part upon [Phillips's] payment of restitution pending sentencing." (C. 30-31; R. 8, 21, 25-26.) And a nonprison recommendation under the presumptive sentencing standards encompasses sentences of probation, community corrections, county jail or work release, a reverse split, and a split sentence with a suspended split.[5] Presumptive and Voluntary Sentencing Standards Manual, p. 29.

After hearing arguments, the trial court found that good cause existed to excuse the State's late notice for the following expressly stated reasons: (1) because Phillips and the State had conducted extensive settlement negotiations, which included the State's reservation of the

---

[5]Likewise, a prison recommendation under the presumptive sentencing standards would encompass sentences to the Department of Corrections, community corrections, a split sentence to the Department of Corrections, a split sentence to community corrections, or high-intensity probation. Presumptive and Voluntary Sentencing Standards Manual, p. 29.

right to oppose probation or community corrections; (2) because a large amount of restitution (nearly $250,000) was at issue in the case; (3) because of Phillips's relationship as a lawyer (a fiduciary) to the victims when she committed the criminal acts against them; and (4) because the plea negotiations between the parties discussed statutory ranges of punishment, indicating that the State had relied, in good faith, upon Phillips's desire to pay restitution, or as much as possible, before her sentencing to get the most favorable sentencing outcome. Given these circumstances, we cannot say that the trial court's finding of good cause was an abuse of discretion.

Like the trial court, we note that the State should have provided its notice of aggravating factors earlier, even though it intended to seek sentencing based on whether, and to what extent, Phillips had paid restitution by the time of sentencing. Nonetheless, the trial court's finding that good cause existed to allow the State's late notice of aggravating factors was not an abuse of discretion.

The most compelling evidence is the written plea agreement signed by the parties and presented to the trial court. The written plea agreement specifically states:

19

"The Defendant understands that her payment of restitution pending sentencing shall be used as a determinative factor in the State's arguments related to sentencing. The State reserves the right to oppose Defendant's application for probation or community corrections, dependent in part upon her payment of restitution pending sentencing."

(C. 30-31.) The trial court reiterated this provision before accepting Phillips's pleas. Phillips stated that she understood that her sentencing determination would be dependent upon her payment of restitution and that the State had reserved its right to oppose probation or community corrections accordingly. Moreover, the State's reservation of the right to oppose Phillips's request for probation or community corrections would be, for the most part, meaningless if the State could not seek sentences that departed from the presumptive sentencing standards. The plea agreement itself refutes Phillips's insistence that she relied upon the presumptive sentencing standards when she made her pleas. We do not read the agreement as narrowly as Phillips requests. The State and Phillips's discussion of statutory ranges of punishment and the failure to agree to any specific sentencing terms all support the trial court's finding that aggravating factors were, at a minimum, discussed during settlement negotiations. Finally, we recognize the significance that, as of the initial sentencing hearing on February 2, 2023, Phillips had not

20

paid <u>any</u> amount toward restitution, which by the agreement determined the sentences the State would seek and necessitated the notice of aggravating factors. Interestingly, as of the sentencing hearing on January 25, 2024, Phillips had still not paid <u>any</u> money toward restitution. In sum, we hold that the trial court did not abuse its substantial discretion in determining that good cause existed for the State's late notice of aggravating factors when considering all the facts and circumstances of this case.

We also note that our holding that the trial court did not abuse its discretion by finding good cause to excuse the State's late notice in this case is further supported by the great lengths the trial court went to prevent any harm to Phillips. The trial court provided Phillips an opportunity to withdraw her guilty pleas, which she declined, as well as "an opportunity to research and rebut the aggravating factor[s]." <u>Presumptive and Voluntary Sentencing Standards Manual</u> p. 31. Phillips received the State's notice of aggravating factors on February 2, 2023, and the trial court held a hearing regarding whether good cause existed for the late notice of those aggravating factors on May 31, 2023, approximately four months later. After finding good cause, the trial court

set a jury trial on the aggravating factors for November 13, 2023. However, on the trial date, approximately nine months' later, Phillips stipulated to three aggravating factors. Clearly, the trial court gave Phillips ample "opportunity to research and rebut the aggravating factor[s]," as well as the State's assertion of good cause.

For these same reasons, had there been error, it would have been error without injury. Phillips was aware that the presumptive sentencing standards recommended a nonprison sentence and provided a durational range, but Phillips was also advised at her plea hearing of the statutory range of punishment for each of her offenses. On February 2, 2023, after Phillips received the State's late notice of aggravating factors, the trial court asked whether Phillips would like to withdraw her guilty pleas, and the State was not opposed to the withdrawal. At the May 31, 2023, hearing on whether good cause existed for the State's late notice, Phillips argued that the State's failure to provide timely notice of aggravating factors made her guilty pleas involuntary. After the trial court ruled that it would allow the State to proceed with proving aggravating factors, Phillips, after learning the range of punishment and being given nearly four months to consider the withdrawal of her guilty

pleas, informed the trial court that she did <u>not</u> desire to withdraw her guilty pleas. Because Phillips was given an opportunity to withdraw her guilty pleas and refused, the trial court did not err. <u>See</u> <u>Andrews v. State</u>, 12 So. 3d 728, 732 (Ala. Crim. App. 2009) (holding that, once defendant had full understanding of the trial court's intention to not follow the plea agreement, a defendant must be allowed an opportunity to withdraw his or her guilty plea); <u>see also</u> <u>Brooks v. State</u>, 606 So. 2d 615, 616 (Ala. Crim. App. 1991) (recognizing that a defendant must be apprised of the range of punishment before pleading guilty but that erroneous information renders the plea involuntary only if the defendant would have changed her mind about pleading guilty once she understood the proper range of punishment). In addition, Phillips later stipulated to the three aggravating factors. Thus, even had the trial court abused its discretion, which we hold it did not, any error from the State's late notice was harmless. <u>See</u> Rule 45, Ala. R. App. P.

In sum, the trial court did not abuse its significant discretion in finding that good cause existed to excuse the State's late notice of aggravating factors to seek sentences that departed from those recommended under the presumptive sentencing standards. This is an

exceptional case that warrants departure sentences. Moreover, the late notice does not appear to have injured Phillips, who, after learning of the proper range of punishment applicable to the offenses for which she pleaded guilty, declined to withdraw her guilty pleas. Phillips is due no relief on this argument.

### III.   Illegal Sentences

Although not raised by either the State or Phillips, this Court must take notice that the sentences imposed on four of the charges against Phillips are illegal. Phillips's convictions and sentences for two counts of first-degree theft of property, two counts of first-degree theft by deception, and one count of first-degree financial exploitation of an elderly person are proper. However, the split sentences imposed for Phillips's convictions for one count of second-degree theft of property, one count of second-degree financial exploitation of an elderly person, one count of third-degree theft of property, and one count of third-degree theft by deception are illegal. "It is well settled that '[m]atters concerning unauthorized sentences are jurisdictional.' Hunt v. State, 659 So. 2d 998, 999 (Ala. Crim. App. 1994). Therefore, this Court may take notice of an illegal sentence 'at any time and may do so even ex mero motu.' Moore

24

v. State, 40 So. 3d 750, 753 (Ala. Crim. App. 2009)." Towns v. State, 293

So. 3d 975, 985 (Ala. Crim. App. 2019).

Second-degree theft of property, see § 13A-8-4, Ala. Code 1975, and

second-degree financial exploitation of an elderly person, see § 13A-6-

196, Ala. Code 1975, are classified as Class C felonies.  A Class C felony

is punishable by imprisonment for "not more than 10 years or less than

one year and one day."  § 13A-5-6(a)(3), Ala. Code 1975.  Third-degree

theft of property and third-degree theft by deception, see § 13A-8-4.1, Ala.

Code 1975, are classified as Class D felonies.  A Class D felony is

punishable by imprisonment for "not more than five years or less than

one year and one day."  § 13A-5-6(a)(4), Ala. Code 1975.  However,

> "'"[a] defendant's sentence is determined by the law in effect
> at the time of the commission of the offense."'  Moore[ v.
> State], 40 So. 3d [750,] 753 [(Ala. Crim. App. 2009)] (quoting
> Davis v. State, 571 So. 2d 1287, 1289 (Ala. Crim. App. 1990)).
> See also Minnifield v. State, 941 So. 2d 1000, 1001 (Ala. Crim.
> App. 2005) ('It is well settled that the law in effect at the time
> of the commission of the offense controls the prosecution.')."

Towns, 293 So. 3d at 986.  At the time of Phillips's offenses, § 15-18-8(b),

Ala. Code 1975, stated, in pertinent part:

> "Unless a defendant is sentenced to probation, drug court, or
> a pretrial diversion program, when a defendant is convicted
> of an offense that constitutes a Class C or D felony offense and
> receives a sentence of not more than 15 years, the judge

25

presiding over the case shall order that the convicted defendant be confined in a prison, jail-type institution, treatment institution, or community corrections program for a Class C felony offense or in a consenting community corrections program for a Class D felony offense … for a period not exceeding two years in cases where the imposed sentence is not more than 15 years, and that the execution of the remainder of the sentence be suspended notwithstanding any provision of the law to the contrary and that the defendant be placed on probation for a period not exceeding three years and upon such terms as the court deems best."

Phillips was not sentenced pursuant to the Habitual Felony Offender Act, § 13A-5-9, Ala. Code 1975. She was sentenced to 10 years' imprisonment, which was split for Phillips to serve 3 years' imprisonment followed by 5 years' supervised probation for both second-degree theft of property and second-degree financial exploitation of an elderly person, which are Class C felonies. Alabama law, however, required that Phillips's imposed sentences for her Class C felonies be probated for a term of up to five years or split for her to serve a period of no more than two years followed by a period of probation for no more than three years. Because the execution of these two sentences is illegal, we must remand this case to the trial court for it to impose sentences that comply with § 15-18-8(b). Because Phillips's underlying 10-year sentences are valid,

26

the trial court cannot change those base sentences. See Born v. State, 331 So. 3d 626, 638 (Ala. Crim. App. 2020).

Additionally, Phillips was sentenced to five years' imprisonment, which was split for Phillips to serve one year of imprisonment followed by two years' supervised probation for both third-degree theft of property and third-degree theft by deception, which are Class D felonies. The duration of those sentences are valid and cannot be changed. See Born v. State, 331 So. 3d at 638. However, Alabama law required that Phillips's sentences for her Class D felonies be either probated or served either in a community-corrections program or, if no program exists in DeKalb County "and no alternative program options are available under subsection (e) of Section 15-18-172," Ala. Code 1975, that she be sentenced "to high-intensity probation under the supervision of the Board of Pardons and Paroles in lieu of community corrections." § 15-18-8(b) and (e), Ala. Code 1975. See, e.g., Laakkonen v. State, 293 So. 3d 439, 444 (Ala. Crim. App. 2019) (holding that the circuit court abused its discretion by departing from the sentencing standards because § 15-18-8(b) requires the defendant's sentence for a Class D felony be split and "served in community corrections"). Thus, we must remand this case to

27

the trial court for it to impose sentences on Phillips's convictions for third-degree theft of property and third-degree theft by deception that comply with § 15-18-8(b) and (e).

Conclusion

For these reasons, Phillips's convictions for two counts of first-degree theft of property, two counts of first-degree theft by deception, and one count of first-degree financial exploitation of an elderly person and the resulting concurrent sentences of 20 years' imprisonment, which were split for Phillips to serve 4 years' imprisonment followed by 5 years' supervised probation, are affirmed. Phillips's convictions for one count of second-degree theft of property, one count of second-degree financial exploitation of an elderly person, one count of third-degree theft of property, and one count of third-degree theft by deception are also affirmed. However, this case is remanded to the trial court for that court to resentence Phillips, in open court with Phillips and her attorney present, in accordance with this opinion for her convictions of second-degree theft of property, second-degree financial exploitation of an elderly person, third-degree theft of property, and third-degree theft by

28

deception. Due return shall be made to this Court within 42 days of the date of this opinion.

AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.

Windom, P.J., and Kellum, Minor, and Anderson, JJ., concur.